**IN THE COURT OF APPEALS OF IOWA**

No. 13-1754
Filed December 24, 2014

**MCKINLEY DUDLEY JR.,**
　　　Applicant-Appellant,
**vs.**

**STATE OF IOWA,**
　　　Respondent-Appellee.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Gregg R. Rosenbladt, Judge.

McKinley Dudley Jr. appeals the district court's ruling denying his application for postconviction relief. **AFFIRMED.**

Sarah A. Reindl of Reindl Law Firm, Mason City, for appellant.

Thomas J. Miller, Attorney General, Benjamin Parrott, Assistant Attorney General, and Carlyle D. Dalen, County Attorney, for appellee.

Heard by Mullins, P.J., and Bower and McDonald, JJ.

**BOWER, J.**

McKinley Dudley Jr. appeals the district court's denial of his application for postconviction relief (PCR) for his convictions of (1) possession of methamphetamine, third or subsequent offense, a class "D" felony as a habitual offender, and (2) possession of methamphetamine, third or subsequent offense, a class "D" felony as a habitual offender. *See* Iowa Code §§ 124.204.4(m), .206(4), .401(5), 902.8, .9(3) (2009). He claims his trial counsel rendered ineffective assistance by allowing the case to go beyond the speedy-trial deadline, failing to investigate witnesses, and failing to pursue an *Alford* plea. He further claims the sentences imposed constitute cruel and unusual punishment.[1] We affirm.

## I. Background Facts and Proceedings

The background facts leading to Dudley's convictions are set out in this court's ruling resolving his direct appeal:

> A reasonable fact finder considering the evidence presented at trial could find the following: At about 1:00 a.m. on September 18, 2010, Mason City Police Officer Joshua Eernisse was in a marked patrol car and wearing his uniform. While he and student intern Dustin Hodson were investigating another call, they observed the defendant, McKinley Dudley Jr., riding a bicycle without a headlight.
> Officer Eernisse parked his vehicle in a parking lot, got out, and asked Dudley to come over to the patrol car as he intended to inform Dudley it was against city ordinance to ride a bicycle without a headlight. Dudley turned his bicycle and started to ride toward the officer. Officer Eernisse asked Dudley to stop and talk. Dudley approached the officer but continued riding. Officer Eernisse

---

[1] Dudley relies on the United States Constitution for this claim and does not cite to article I, section 17 of the Iowa Constitution. We note that even if Dudley had based his claim on the Iowa Constitution, under the circumstances of this case, the resolution would be the same.

stated, "police, stop," and when Dudley continued to ride, the officer yelled "stop." Officer Eernisse grabbed Dudley's arm. Dudley kept riding. Officer Eernisse tackled Dudley off the bike and in doing so suffered an abrasion to his right knee. Officer Eernisse then placed Dudley in handcuffs and searched him, finding marijuana and methamphetamine.

*State v. Dudley*, No. 11-0413, 2012 WL 170738, at *1 (Iowa Ct. App. Jan. 19, 2012).

In addition to the drug charges, the State charged Dudley with interference with official acts and public intoxication. Counsel was appointed, and in October 2010, Dudley entered a plea of not guilty. At the end of November 2010, counsel informed the court Dudley wanted to enter a guilty plea pursuant to the State's plea offer. But at the December 13, 2010 guilty plea hearing, after much preliminary discussion, Dudley did not provide a factual basis for the guilty pleas, and the court reset the case for trial. Subsequently, Dudley filed a pro se motion to dismiss, claiming his speedy-trial rights had been violated. The motion was denied.

Following trial, the jury returned verdicts finding Dudley guilty of both drug offenses, guilty of the interference-with-official acts charge, and not guilty of public intoxication. Dudley stipulated to prior drug-related convictions and prior felony convictions. On the drug offenses challenged in this appeal, the court sentenced Dudley to an indeterminate fifteen-year term for possession of methamphetamine enhanced as a habitual offender and an indeterminate fifteen-

year term for possession of marijuana enhanced as a habitual offender; the sentences were to run concurrently.[2]

    **A.   Direct Appeal.**   Dudley appealed his convictions, claiming the evidence was insufficient to sustain his conviction for interference with official acts. We agreed, vacated the corresponding judgment, and remanded.[3] Dudley filed a pro se brief challenging the sentencing enhancements, claiming he was improperly convicted of felonies where he possessed small amounts of marijuana (a teaspoon) and methamphetamine (1/100th of a teaspoon) that would only sustain misdemeanor convictions. Noting Dudley's convictions are subject to enhanced sentences under both Iowa Code chapters 124 and 902, we rejected his challenge:

> "The legislature classifies a violation of section 124.401(5) as either a misdemeanor or felony based on a defendant's prior drug-related convictions. Iowa Code § 124.401(5). If the defendant has no prior drug-related convictions, a violation of section 124.401(5) is a serious misdemeanor. *Id.* If the defendant has one prior drug-related conviction, a violation of section 124.401(5) is an aggravated misdemeanor. *Id.* If the defendant has two prior drug-related convictions, a violation of section 124.401(5) is a class "D" felony. *Id.* Because [the defendant] had two prior drug-related

---

[2] The trial information listed four prior controlled substance convictions—January 1998, April 2002, October 2006, and April 2008. During the PCR proceedings, Dudley claimed the possession of marijuana, third offense, was enhanced from an aggravated misdemeanor based on an uncounseled simple misdemeanor possession of drug paraphernalia prior offense. Dudley also claimed the prior offenses for the possession of methamphetamine, third offense, were "two possession of marijuana convictions and one possession of drug paraphernalia conviction."

    The trial information listed seven prior felony convictions—May 1984 (second-degree burglary), January 1992 (second-degree burglary), August 1998 (forgery), August 1999 (second-degree theft), July 17, 2002 (operating while intoxicated on 10/27/2001, third offense), July 25, 2002 (operating while intoxicated on 2/4/2002, third offense), and October 2009 (operating while intoxicated on 3/5/2009, third or subsequent offense).

[3] Additionally, Dudley challenged the restitution ordered for attorney fees. We vacated the order and remanded for the entry of a new restitution order.

convictions, section 124.401(5) classified his violation as a class "D" felony . . . .

Under the same sentencing scheme, a habitual offender shall be confined no more than fifteen years. *Id.* § 902.9(3). A habitual offender includes any person convicted of a class "D" felony who has twice before been convicted of a felony. *Id.* § 902.8."

*Dudley*, 2012 WL 170738, at *6 (quoting *State v. Maxwell*, 743 N.W.2d 185, 190–91 (Iowa 2008)). We concluded "Dudley's offenses were classified as class 'D' felonies pursuant to section 124.401(5) based on his prior drug-related convictions, as well being a habitual offender under section 902.9(3)." *Id.*

Dudley's second pro se challenge claimed trial counsel was ineffective in failing to allege a violation of his speedy-trial rights. This court disagreed, ruling: "But when Dudley indicated on November 30, 2010, that he planned to plead guilty, and asked for the case to be set for further proceedings to enter a guilty plea, he effectively waived his right to trial and his right to a speedy trial." *Id.*; *see State v. Warmuth*, 532 N.W.2d 163, 166 (Iowa Ct. App. 1995) (stating where the court determines the guilty plea cannot be accepted, a new ninety-day period for speedy trial commences from the date the court declines the plea). We concluded, therefore, Dudley's ninety-day period for speedy trial began anew on December 13, 2010, his January 5, 2011 trial did not violate his speedy-trial rights, and defense counsel had no duty to move to dismiss on this ground. *Dudley*, 2012 WL 170738, at *7.

**B. Postconviction Proceedings.** In June 2012 Dudley filed an application for postconviction relief, claiming trial counsel was ineffective in allowing the case to go beyond the speedy-trial deadline, in failing to investigate

witnesses, and in failing to pursue an *Alford* plea.[4]   Dudley also claimed the trial court was without authority to impose sentencing enhancements in each count and without authority to impose the habitual offender sentencing enhancement, contending his conviction for possession of drug paraphernalia, a simple misdemeanor, should not be used for purposes of enhancing the charge.

Finally, Dudley claimed the sentencing enhancements elevating each charge to a class "D" felony and the following enhancement of each count to habitual offender status constituted cruel and unusual punishment.   He acknowledged the court in *State v. Allen* ruled the Iowa Constitution, like the Federal Constitution, does "not bar use of prior uncounseled misdemeanor convictions for later enhancement where the prior conviction did not itself result in a term of incarceration."   690 N.W.2d 684, 692 (Iowa 2005) ("Sometimes the past does catch up to you.").   Dudley claimed, however, a cruel and unusual analysis, implicating "different rights of the defendant" and tailored to the individual defendant, is sufficiently different to compel a different result.   He claimed the sentences are categorically unconstitutional, stating:

> The court, in using its own judgment to weigh the gravity of the offense and the punishment, should find that a fifteen-year prison sentence for possession of half a teaspoon of marijuana and a fifteen-year prison sentence for possession of 1/100 of a teaspoon of methamphetamine, even considering that this sentence includes at least two prior violations of Iowa Code chapter 124 and two prior felony convictions, are so disproportionate to the punishments that

---

[4] Dudley's additional claims were: (1) he should have been assigned a different trial attorney due to a "conflict of interests" and his lack of trust of trial counsel; and (2) counsel was ineffective by failing to disclose the drug tests results to him, by introducing black and white photos of Dudley's injuries instead of color photos, and by failing to adequately explain the maximum penalties applicable to the charges.   These claims were discussed and rejected by the PCR court and are not before us on appeal.

they constitute cruel and unusual punishment and are unconstitutional.

At the hearing on Dudley's application, two of the witnesses Dudley claimed counsel should have investigated testified, as did Dudley and Dudley's trial counsel. In ruling, the postconviction court discussed the prior proceedings:

> The transcripts reveal, additionally, that Mr. Dudley was on notice that the drug charges he was facing were elevated to habitual offender status. In reviewing the plea agreement, at the aborted plea change hearing on December 13, 2010, the court reviewed with Mr. Dudley the proposed plea agreement, which included that the State would not pursue the "habitual offender" enhancement. Additionally, just prior to trial, a record was made on January 5, 2011, at which time [Dudley] stipulated to his prior felony convictions.
> . . . .
> The court further notes, at the time of sentencing, the sentences for both drug charges (based on the enhancements and the habitual offender status) were ordered to run concurrently by the court. Mr. Dudley was not sentenced to the maximum possible sentence permitted by law, as theoretically, the two counts could have been run consecutively for a total of 30 years.

The PCR court denied relief on all claims, and this appeal followed.

## II. Scope and Standards of Review

Dudley's claim his trial counsel rendered ineffective assistance is reviewed de novo. *See Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012). To establish an ineffective-assistance-of-counsel claim, Dudley must demonstrate, by a preponderance of the evidence, trial counsel failed to perform an essential duty and the failure prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). We employ a strong presumption counsel performed reasonably and competently. *State v. Cook*, 565 N.W.2d 611, 613–14 (Iowa 1997).

Dudley's sentencing challenge based on the Eighth Amendment to the United States Constitution is also reviewed de novo. *See State v. Bruegger*, 773 N.W.2d 862, 872 (Iowa 2009).

## III. Ineffective Assistance of Counsel

**A. Speedy Trial.** Dudley claims trial counsel "was ineffective for allowing the case to go beyond the ninety-day speedy trial deadline." Dudley made a similar claim on direct appeal; thus, his postconviction claim is barred by Iowa Code section 822.8 (2011). *See Holmes v. State*, 775 N.W.2d 733, 735 (Iowa Ct. App. 2009) (stating a defendant "cannot now relitigate issues decided adversely to him on direct appeal").

To the extent Dudley is separately claiming counsel was ineffective for requesting a guilty plea hearing because he had not consented to plead guilty, the PCR court credited the testimony of defense counsel that she set the matter for plea change because Dudley specifically indicated his intent to accept the State's plea offer and plead guilty. *See Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 614 (Iowa 1996) ("The district court has a better opportunity than we do to evaluate the credibility of witnesses. So we think factual disputes depending heavily on such credibility are best resolved by the district court."). The PCR court also noted the transcript of the plea change/guilty plea hearing shows Dudley confirming his intent to plead guilty, thus supporting defense counsel's testimony. We see no reason to disturb the PCR court's credibility determination. After our de novo review, we conclude this claim is without merit.

**B. Failure to Investigate Defense Witnesses.** Dudley claims counsel should have contacted witnesses to help establish the methamphetamine found in his coat was not his.[5] He contends their testimony would have supported his trial testimony (1) the jacket he was wearing when arrested had been loaned out to others, and (2) he was unaware of the package of methamphetamine in the jacket's pocket. He contends defense counsel's failure to investigate the witnesses constituted ineffective assistance.

Dudley called two witnesses at the PCR hearing to support this challenge. Melinda Kavars testified Dudley left his coat at her house and known users of methamphetamine were "coming in and out." She also stated "it's possible" someone would have borrowed Dudley's jacket and could have left a baggie with methamphetamine residue in it. Annette Stevens testified she had known Dudley for five years, he did not use methamphetamine, and he would not be carrying the drug.

In contrast, defense counsel testified she did not remember Dudley giving her the names of the four specific witnesses he claims she should have called. Importantly, she recounted that when she heard Dudley testify at trial "that some woman had his jacket, I remember thinking I've never heard this before and I don't have any idea who that person supposedly is." Counsel also stated: "I don't think he ever brought it up that it was Melinda Kavars because I would have known who that was and I wouldn't have been surprised when he testified about it at trial."

---

[5] Dudley made no argument concerning the marijuana found in his billfold.

The PCR court "did not find the testimony of Ms. Kavars and Ms. Stevens to be either very credible or very relevant." The court credited the testimony of defense counsel and found Dudley did not tell defense counsel about the witnesses. We see no reason to disturb the PCR court's credibility determination. *See Forristall*, 551 N.W.2d at 614. Accordingly, we conclude defense counsel was not ineffective for failing to investigate defense witnesses who were unknown to her.

**C. Failure to Pursue an *Alford* Plea.** Dudley claims trial counsel was ineffective in failing to inform him about the possibility of entering an *Alford* plea. An *Alford* plea allows a defendant to voluntarily and intelligently plead guilty even if he is unwilling or unable to admit his participation in the acts constituting the crime. *See North Carolina v. Alford*, 400 U.S. 25, 32-38 (1970).

At the PCR hearing, defense counsel explained she did not actively pursue the entry of an *Alford* plea after Dudley failed to supply a factual basis at the time of his plea change hearing because she believed the State, through its prosecutors, would not agree to an *Alford* plea, nor did she believe the court would accept an *Alford* plea.

In resolving the issue, the PCR court reviewed the transcript of the plea change hearing and found "it is apparent that the State of Iowa was very firm in its plea offer. The State would not back down from recommending that the sentence in this matter would run consecutively with the five-year OWI Third sentence." Noting a defendant cannot unilaterally force either the State or the district court to accept an *Alford* plea, the PCR court concluded there is no

indication in the record that the State was flexible and would "entertain the taking of an *Alford* plea," and "the evidence is simply not sufficient that an *Alford* plea would have been a possible option."

The State claims the lack of evidence in the record makes this challenge "utterly speculative." We agree. An *Alford* plea requires a factual basis in the record and nothing in the record before us suggests Dudley would have abandoned his claim the methamphetamine was not his. *See State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999) (stating the factual basis requirement exists for *Alford* pleas). Also, an *Alford* plea requires the agreement of the State and the district court. *See* Iowa R. Crim. P. 2.8(2)(b). Upon our de novo review, we find nothing in the record shows the State would have agreed to an *Alford* plea or shows the district court would have accepted it.

Accordingly, Dudley has failed to rebut the strong presumption that counsel performed reasonably and competently. *See Cook*, 565 N.W.2d at 614; *see also Lopez v. State*, No. 03-0590, 2004 WL 360481, at *2-3 (Iowa Ct. App. Feb. 27, 2004) (rejecting ineffective-assistance claim based on defense counsel's failure to inform the defendant of the possibility of an *Alford* plea and noting the alleged prejudice "is much too speculative").

## IV. Cruel and Unusual Punishment

Dudley claims the court's imposition of concurrent fifteen-year sentences for his possession of only a small of amounts of drugs, "categorically and individually constitutes cruel and unusual punishment" under the Eighth Amendment to the United States Constitution.

The State responds Dudley did more than possess small quantities of drugs—he repeatedly violated Iowa's drug laws and repeatedly committed other felonies. Thus, the recidivism statutes activated by Dudley's repeated unlawful actions led to the imposition of the indeterminate fifteen-year terms. Those statutes enhanced Dudley's punishment because the legislature has determined a defendant's *repeated violations* of our laws supports a longer sentence than a first-time offender. Thus, the State claims the question is whether it is cruel and unusual to punish a three-time felony offender for possessing a small amount of drugs. We agree with the State's formulation of the issue.

**A. Categorical Analysis.** "[C]ategorical challenges to a particular sentence can be based on either the characteristics of the crime or the criminal." *State v. Oliver*, 812 N.W.2d 636, 641 (Iowa 2012). The Iowa Supreme Court recently clarified the two-step inquiry courts use to analyze categorical challenges:

> First, we consider objective indicia of society's standards, as expressed in legislative enactments and state practice to determine whether there is a national consensus against the sentencing practice at issue. Second, we exercise our own independent judgment guided by the standards elaborated by controlling precedents and by [our] own understanding and interpretation of the [constitution's] text, history, meaning, and purpose.

*State v. Lyle*, 854 N.W.2d 378, 386 (Iowa 2014) (citations and quotation marks omitted).

As the State points out, Dudley does not claim there is a national consensus against enhanced sentences for recidivist offenders. Such a claim would be nonsensical in light of the facts (1) there is a national consensus

favoring punishing repeat offenders more severely than first-time offenders, and (2) recidivist statutes have been enacted in all states and at the federal level. *See Parke v. Raley*, 506 U.S. 20, 26-27 (1992) ("Statutes that punish recidivists more severely than first offenders have a long tradition in this country that dates back to colonial time."). As one example, the United States Supreme Court rejected a "cruel and unusual" challenge and upheld a "three-strikes-law" sentence of twenty-five years to life in prison for a recidivist felon's theft of three golf clubs in *Ewing v. California*, 538 U.S. 11, 25-30 (2003) (recognizing "States have a valid interest in deterring and segregating habitual criminals").

We turn to the second step, whether the enhanced sentences for repeat drug offenses and for repeat felonies "violates the Cruel and Unusual Punishment Clause in light of its text, meaning, purpose, and history." *Lyle*, 854 N.W.2d at 390. We consider "whether the challenged sentencing practice serves" any of four legitimate penological goals—retribution, deterrence, incapacitation, and rehabilitation. *Oliver*, 812 N.W.2d at 646. We recognize, however, different criminal punishments have different goals "and choosing among them is within a legislature's discretion." *Id.*

In *Oliver*, the Iowa Supreme Court reviewed a statute increasing punishments for recidivist sex offenders and ruled: "Enhancing punishment based on recidivism fulfills the legitimate goals of incapacitation and deterrence." *Id.* (ruling the statute did not constitute cruel and unusual punishment under a categorical analysis). Those two goals—incapacitation and deterrence—are also advanced by the recidivist statutes enhancing Dudley's punishment, i.e., Iowa

Code section 124.401(5) (making one who violates the controlled substances chapter and has two prior drug convictions guilty of a class "D" felony) and Iowa Code section 902.9(3) (punishing a felon previously convicted of two felonies with a maximum fifteen-year sentence).

We turn to the goal of retribution, which is the "restoration of the moral imbalance caused by the offense." *Id.* (citation and quotation marks omitted). To be subject to the maximum sentence of fifteen years after being found in possession of marijuana or methamphetamine, Dudley had, at a minimum, at least two prior drug convictions and two prior felony convictions. *See* Iowa Code §§ 124.401(5), 902.9(3). As such, the longer sentences imposed in those circumstances restores the moral imbalance caused by the repeated nature of the drug offenses and the separate felonies. *See Oliver*, 812 N.W.2d at 650 ("[A] recidivist offender is more culpable and thus more deserving of a longer sentence than a first-time offender.").

As in *Oliver*, because Dudley's sentence serves at least three legitimate goals and is supported by a national consensus, we conclude his sentence is not categorically cruel and unusual. *See Parke*, 506 U.S. at 27 (stating "we have repeatedly upheld recidivism statutes against contentions that they violate constitutional strictures dealing with . . . cruel and unusual punishment").

**B. Constitutional Challenge to Dudley's Individual Sentences**. We consider Dudley's "individual" claim as a gross disproportionality challenge. *See Oliver*, 812 N.W.2d at 640 (explaining a defendant may make a gross disproportionality claim regarding his or her individual sentence). Using this

standard, Dudley contends the penalty mandated by the statutes is so grossly disproportionate to the crimes he committed that following the statutes in his individual situation would violate the constitution. *See id.* at 647.

The Iowa Supreme Court has instructed: "The first step in this analysis, sometimes referred to as the threshold test, requires a reviewing court to determine whether a defendant's sentence leads to an inference of gross disproportionality." *Id.* "[O]nly if the threshold test is satisfied" does the court proceed to additional analysis. *Id.* "This preliminary test involves a balancing of the gravity of the crime against the severity of the sentence." *Bruegger*, 773 N.W.2d at 873 (recognizing a "life sentence for a parking ticket could run afoul of cruel and unusual punishment as being grossly disproportionate to the crime").

Dudley faces an uphill battle because his sentence for a term of years "might be so lengthy as to violate the Cruel and Unusual Punishment Clause, [but] such an occurrence outside the context of capital punishment has been exceedingly rare." *Id.* (citations and quotation marks omitted). Further, the general theory of case precedent is "that a sentence for a term of years within the bounds authorized by statute is not likely to be 'grossly disproportionate' under the Cruel and Unusual Punishment Clause." *Id.*

When conducting the threshold test's balancing process, courts consider several general principles. *Oliver*, 812 N.W.2d at 650. First, "we owe substantial deference to the penalties the legislature has established for various crimes." *Id.* This deferential standard recognizes judgments of the legislature are regarded, in general, "as the most reliable objective indicators of community standards for

purposes of determining whether a punishment is cruel and unusual." *Bruegger*, 773 N.W.2d at 873. Second, we recognize "it is rare that a sentence will be so grossly disproportionate to the crime as to satisfy the threshold inquiry and warrant" additional review. *Oliver*, 812 N.W.2d at 650. Third, "a recidivist offender is more culpable and thus more deserving of a longer sentence than a first-time offender." *Id.* Accordingly, in this court's determination of the gravity of Dudley's crime, we consider his criminal history. *See id.* (citing *Ewing*, 538 U.S. at 29 ("In weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism.")). Fourth and finally, we consider whether unique features of Dudley's case converge, generating "a high risk of potential gross disproportionality." *Bruegger*, 773 N.W.2d at 884.

Upon our de novo review, we conclude Dudley has failed to establish any of the four threshold factors. As to the first factor, on direct appeal this court considered and rejected Dudley's claim his criminal charges were improperly enhanced under Iowa's statutes because he possessed only small amounts of drugs. Here, we give deference to the legislature's determination our community standards objectively include punishing a defendant's recidivist drug crime as a "D" felony when the defendant has previously been convicted of two or more violations of our controlled substances chapter. We give similar deference to the legislature's determination our community standards objectively include the habitual offender enhancement for Dudley's conviction of multiple felonies.

Turning to the second factor, Dudley has failed to prove his case is the rare case with such exceptional circumstances that this factor has been met.  He again emphasizes the small amounts he possessed; we are not persuaded.  *See Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) (Kennedy, J., concurring) ("Possession, use, and distribution of illegal drugs represents one of the greatest problems affecting the health and welfare of our population.").  A similar *de minimus* claim has been rejected by the United States Supreme Court:

> In this case, however, we need not decide whether Texas could impose a life sentence upon Rummel merely for obtaining $120.75 by false pretenses.  Had Rummel only committed that crime . . . he could have been imprisoned for no more than 10 years.  In fact, at the time that he obtained the $120.75 by false pretenses, he already had committed and had been imprisoned for two other felonies, crimes that Texas and other states felt were serious enough to warrant significant terms of imprisonment even in the absence of prior offenses.  Thus the interest of the State of Texas here is not simply that of making criminal the unlawful acquisition of another person's property; it is in addition the interest, expressed in all recidivist statutes, in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.  By conceding the validity of recidivist statutes generally, Rummel himself concedes that the State of Texas, or any other state, has a valid interest in so dealing with that class of persons.

*Rummel v. Estelle*, 445 U.S. 263, 276 (1980).

Third, the gravity here is enhanced by Dudley's lengthy criminal record— four prior drug crimes and seven prior felonies.  Dudley's recidivism supports enhanced punishments, and Dudley's punishment is not, as a matter of fact, overly severe.[6]  First, the court did not run the sentences consecutively.  Second,

---

[6] Dudley does not challenge the three-year mandatory minimum set out in Iowa Code section 902.8 (minimum sentence for an habitual offender).

Dudley is eligible to reduce his fifteen-year sentence by more than fifty percent through the accumulation and application of "earned time." *See* Iowa Code section 903A.2. Third, Dudley would be eligible for parole when and if the parole board determines "there is a reasonable probability [he] can be released without detriment to the community or to [himself]." Iowa Code § 906.4; *see Rummel,* 445 U.S. at 281 (ruling the opportunity for parole, "however slim," reduces the severity of a defendant's life sentence and refusing to strike down the recidivism-enhanced sentence based on three underlying felonies where the third felony was obtaining $120.75 by false pretenses).

Finally, Dudley has not persuaded us there are "unique features" converging to generate "a high risk of potential gross disproportionality." In sum, Dudley has failed to satisfy the threshold test, and we need not conduct further analysis of his claim based on gross proportionality. *See Oliver*, 812 N.W.2d at 653 ("Since the penalty does not lead to an inference of gross disproportionality, we need not proceed to steps two and three of the analysis.").

In conclusion, because we find no merit to any claim Dudley presents in his appeal of the PCR court's decision, we affirm.

**AFFIRMED.**